United States District Court
District of Massachusetts

| | |
|---|---|
| John J. Walsh, Jr. ex rel. National Labor Relations Board,<br><br>    Petitioner,<br><br>    v.<br><br>W.B. Mason Co., Inc.,<br><br>    Respondent. | Civil Action No.<br>16-11934-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

The National Labor Relations Board ("the Board") alleges that W.B. Mason Co., Inc. engaged in unfair labor practices in response to a union organizing campaign by Mason's employees in 2015, in violation of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, et seq.

Pending before the Court is 1) petitioner's motion to decide the temporary injunction on the administrative record and 2) its motion for a temporary injunction, pursuant to § 10(j) of the NLRA, pending final disposition of administrative proceedings now before the Board.

**I.  Factual and Procedural Background**

John J. Walsh, Jr., Regional Director of Region 1 of the Board, petitions the Court for a temporary injunction for and on

-1-

behalf of the Board.  Respondent W.B. Mason Co., Inc. is a company that sells and delivers office supplies and related products and services.

The Board claims that W.B. Mason violated several provisions of the NLRA by employing unfair labor practices when it allegedly 1) interfered with the rights of its employees to organize and bargain collectively, 2) discouraged membership in the International Brotherhood of Teamsters, Local Union No. 25 ("Local 25") by discriminating with respect to hiring, tenure and terms and conditions of employment and 3) refused to bargain in good faith with Local 25.

Between October, 2015, and June, 2016, Local 25 filed six administrative complaints with the Board alleging that respondent violated §§ 8(a)(1), (3) and (5) of the NLRA.  An Administrative Law Judge ("ALJ") held a hearing in June, 2016, on the consolidated complaints.  On November 4, 2016, the ALJ issued a decision concluding that defendant had engaged in unfair labor practices in violation of those provisions.

Petitioner filed a complaint in this Court in September, 2016, alleging multiple violations of the NLRA.  It seeks a temporary injunction under § 10(j) of the NLRA.  Petitioner also filed a motion to try the temporary injunction on the

administrative record.  The Court heard oral argument on both motions on October 25, 2016.

## II. Petitioner's Motion to Try the Temporary Injunction on the Administrative Record

First, the Court will allow petitioner's motion to try the temporary injunction on the administrative record.

The Court's role in reviewing a § 10(j) petition is limited to determining "whether contested factual issues could ultimately be resolved by the Board in favor" of petitioner. Fuchs ex rel. NLRB v. Hood Indus., Inc., 590 F.2d 395, 397 (1st Cir. 1979).  This Court is satisfied that it has enough information in the extensive administrative record, including the decision of the ALJ, to decide the merits of the § 10(j) petition. See id.  The Court will therefore allow the motion to try the temporary injunction on the administrative record.

## III. Petitioner's Motion for a Temporary Injunction

### A. Legal Standard

For a district court to grant a temporary injunction under § 10(j), the Board must establish 1) "reasonable cause" that the respondent committed unlawful labor practices and 2) that injunctive relief is "just and proper." Pye ex rel. NLRB v. Sullivan Bros. Printers, 38 F.3d 58, 63 (1st Cir. 1994). "Reasonable cause" requires that "the Board's position is 'fairly supported by the evidence.'" Id.  The "just and proper"

standard requires the Board to satisfy the prerequisites for a preliminary injunction and show:

> (1) A likelihood of success on the merits;
> (2) The potential for irreparable injury in the absence of relief;
> (3) That such injury outweighs any harm preliminary relief would inflict on the respondent; and
> (4) That preliminary relief is in the public interest.

Id.

The Court should not resolve contested issues of fact and should defer to the Board's characterization of the facts as long as it is "within the range of rationality." Rivera-Vega v. ConAgra, Inc., 70 F.3d 153, 158 (1st Cir. 1995) (quoting Maram v. Universidad Interamericana de Puerto Rico, Inc., 722 F.2d 953, 958 (1st Cir. 1983)). Furthermore, the legal and factual determinations of the ALJ are instructive to the Court. Bloedorn v. Francisco Foods, Inc., 276 F.3d 270, 288 (7th Cir.2001).

### B.  Application

In its opposition, respondent addresses only the "just and proper" requirement. Accordingly, the Court will treat petitioner's arguments for "reasonable cause" as unopposed and will simply address the "just and proper" prong of the test.

#### 1.  Strong Likelihood of Success

Petitioner conceded at oral argument that it must show a strong likelihood of success on the merits of its claims. See Sullivan Bros. Printers, 38 F.3d at 63 ("When . . . the interim

relief sought by the Board 'is essentially the final relief sought, the likelihood of success should be strong.'" (quoting Asseo v. Pan Am. Grain Co. 805 F.2d 23, 29 (1st Cir. 1986)). Respondent generally contends that petitioner cannot make such a showing because respondent has offered legitimate, unrebutted business reasons for its conduct.

### a.   Termination of six employees

First, W.B. Mason contends the NLRB has not shown a strong likelihood of success on the merits with respect to claims arising from the termination of its six employees.

The propriety of adverse employment actions are analyzed under the Wright Line standard adopted by the United States Supreme Court in NLRB v. Transp. Mgmt. Corp., 462 U.S. 393, 395 (1983).  Under that test, the Board must first establish a prima facie case that an employee's protected conduct was a motivating factor in the employer's decision to take an adverse action. Hosp. Cristo Redentor, Inc. v. NLRB, 488 F.3d 513, 518 (1st Cir. 2008).  If the Board makes such a showing, the burden shifts to the respondent to demonstrate that it would have taken the same action in the absence of the employee's protected activity. Id.

### i.   Termination of Oscar Castro

With respect to the termination of Oscar Castro, the Court concludes that the NLRB has not demonstrated a strong likelihood

of success that W.B. Mason violated the NLRA.  The ALJ found credible the testimony of witnesses who recalled Castro provoking another employee and then physically assaulting him in violation of company policy.  Such grounds warrant termination and thus respondent has met its burden under Wright Line.  See NLRB v. Cumberland Farms Dairy, Inc., 674 F.2d 943, 948-49 (1st Cir. 1983) (holding that the discharge of employees involved in a physical altercation does not violate § 8(a)(3)).

### ii.  Termination of Marco Becerra

W.B. Mason maintains that Marco Becerra was terminated for insubordination because he told a customer to order fewer products, otherwise Becerra would not deliver the entire order. The Board contends that purported reason is pretext.

As evidence that respondent's reason for termination was pretext, the Board submitted numerous customer complaints about other drivers' conduct similar to that of Becerra's, including complaints of drivers who criticized customers' large orders. Based on evidence in the record, in those cases, only one of the other drivers was disciplined and he received a verbal reprimand.  Although W.B. Mason argues that Becerra's threat to stop delivery was worse than the other drivers' conduct, the fact that other drivers with longer histories of bad acts were not disciplined indicates Becerra was treated differently.  The

First Circuit Court of Appeals ("First Circuit") has concluded that such disparate treatment supports a finding that Mason's business reason is pretext. See Yesterday's Children, Inc. v. NLRB, 115 F.3d 36, 48-49 (1st Cir. 1997).  Accordingly, W.B. Mason has not met its burden under the second part of the Wright Line test and the Board has shown a strong likelihood of success with respect to the termination of Becerra.

### iii. Termination of Sean Brennan

The Board contends that the termination of Sean Brennan was discriminatory.  W.B. Mason responds that Brennan was suspended and then terminated for 1) skipping four same-day deliveries and not properly scanning the deliveries and 2) making disparaging remarks about deliveries on Morrissey Boulevard ("Morrissey").

The record establishes that Brennan never received any complaints from customers about his work.  Brennan's supervisor knew about his missed stops on Morrissey and that he routinely left work before 5:00 p.m. but Brennan was never disciplined or warned for his conduct.  Moreover, the ALJ credited Brennan's testimony that his supervisor told him he could skip deliveries on Morrissey in order to make his other stops. See McGaw of Puerto Rico, Inc. v. NLRB, 135 F.3d 1, 7 (1st Cir. 1997) (giving "great weight" to the ALJ's credibility determinations).

Therefore, petitioner has shown a strong likelihood of success with respect to the termination of Sean Brennan.

### iv. Layoffs of Kerby Chery, Jason Cobbler and Elton Ribeiro

The Board claims W.B. Mason violated § 8(a)(3) when it laid off Kerby Chery, Jason Cobbler and Elton Ribeiro.  W.B. Mason explains that they were seasonal employees and the layoffs were consistent with its treatment of other seasonal employees.

The ALJ concluded that W.B. Mason failed to meet its burden and found that its reasons for the layoffs were pretextual.

All three employees were listed as "seasonal" in W.B. Mason's standard human resources form that it maintains for each employee.  Moreover, Cobbler noted on his union authorization card that he was a seasonal driver.  The ALJ discounts that admission because apparently other employees told Cobbler he was seasonal for the first two months until being hired permanently.

From April 2013 to October 2015, seven of 15 drivers hired or rehired were promoted or transferred to other positions, and Chery, Cobbler and Ribeiro were the only employees laid off. Two others left the company for school, one resigned and one was terminated for cause.  Thus, 20% of those employees hired or rehired during that period were laid off and less than one-half were promoted or transferred.  Moreover, W.B. Mason provided evidence that it laid off five other employees (in a different

department) on the same day as Chery, Cobbler and Ribeiro, suggesting that it has a practice of laying off employees.

Although the layoff of three seasonal employees during a particularly busy period for the company might perhaps have been imprudent, the NLRA does not require that business decisions be "sound," but only that they not be motivated by anti-union animus. Liberty Mut. Ins. Co. v. NLRB, 592 F.2d 595, 603-04 (1st Cir. 1979) (quoting NLRB v. Rich's of Plymouth, Inc., 578 F.2d 880, 887 n.9 (1st Cir. 1978)).  Accordingly, notwithstanding the factual determinations of the ALJ, the Court concludes that the Board has not shown a strong likelihood of success with respect to the layoffs of Kerby Chery, Jason Cobbler and Elton Ribeiro.

> **b.    Withholding and delayed payment of 2015 wage increase**

Petitioner alleges that respondent violated the NLRA when it withheld wage increases from employees in December, 2015. W.B. Mason submits that it does not always grant wage increases in December and that it made the decision to delay the increase because it suffered below-target profits that month.

Withholding (or granting) benefits does not necessarily violate the NLRA.  The former is unlawful only if the conduct is designed to influence employees' decisions during the organizing campaign. See NLRB v. Otis Hosp., 545 F.2d 252, 255 (1st Cir. 1976).  Specifically, withholding a wage increase violates the

NLRA if the increase would normally be granted based on the employer's past practice. Id.

W.B. Mason suggests that the timing of its wage increases are not consistent but the record shows that drivers and driver helpers received wage increases every December from 2010 through 2014. Moreover, the Company's labor consultant told employees that because of the actions of Local 25, "nobody [could] get any raises." The First Circuit has affirmed the Board's finding of NRLA violations based on similar remarks from employers. See, e.g., Sta-Hi Div., Sun Chem. Corp. v. NLRB, 560 F.2d 470, 473 (1st Cir. 1977). Here, based at least partly on the subject remarks, the Court concludes that the Board has shown a strong likelihood of success that the withholding of the wage increase in December, 2015, violated §§ 8(a)(1) and (3).

Although W.B. Mason did not grant its drivers and driver helpers a wage increase in December, 2015, it gave them a 21.7% increase in May, 2016. The Board avers that such increase violated the NLRA but the Company claims it was given in May because the Company was then in a better financial position.

The United States Supreme Court has recognized that "well-timed increases in benefits" can constitute a violation of the NLRA by interfering with employees' decision to organize. NLRB v. Exch. Parts Co., 375 U.S. 405, 409-10 (1964). Granting

benefits can violate the NLRA if the action is designed to influence the employees' protected organizing activities. Otis Hosp., 545 F.2d at 255.  In making such a determination, the Board considers factors such as the timing of the increase and past practice. NLRB v. Styletek, Div. of Pandel-Bradford, Inc., 520 F.2d 275, 281 (1st Cir. 1975).

May, 2016 may well have been a better time for the wage increase but the Court nevertheless concludes that the Board has shown a strong likelihood of success on the merits.  Between 2011 and 2015, the wage increases for drivers and driver helpers ranged between three and four percent.  The May, 2016 increase was nearly 22%.  Moreover, the increase came at exactly the time Local 25 was filing a petition for representation.  Even if the timing were coincidental, the First Circuit has often affirmed the Board's findings of violations for similarly-timed conduct. See Styletek, 520 F.2d at 281-82.  Accordingly, the Court finds that petitioner has demonstrated a strong likelihood of success that respondent violated §§ 8(a)(1) and (3) of the NLRA by granting a wage increase in May, 2016.

### c.   Questioning union activities

Petitioner alleges that three different employees were "interrogated" by three different supervisors in violation of § 8(a)(1) of the NLRA.

Employers can violate § 8(a)(1) by "coercively interrogating" employees about their union activities or opinions. Hosp. Cristo Redentor, 488 F.3d at 517 (quoting NLRB v. Horizons Hotel Corp., 49 F.3d 795, 804 (1st Cir.1995)). Whether the questioning constitutes an unlawful interrogation depends on the factual circumstances. Id.

The Board claims W.B. Mason violated § 8(a)(1) when Carlos DeAndrade, the Boston branch manager, asked Kenny DeAndrade (no relation) about a subpoena that Kenny received to appear at the June 13 hearing in front of the ALJ.  Kenny testified that Carlos asked to see subpoena.  Conversely, Carlos testified that Kenny offered to show him the subpoena.  The ALJ ultimately credited Kenny's testimony over that of Carlos and concluded that W.B. Mason violated § 8(a)(1).  Although one could come to the opposite conclusion, the credibility determinations of the ALJ are afforded "great weight." McGaw of Puerto Rico, 135 F.3d at 7.  Therefore, petitioner has demonstrated a strong likelihood of success that respondent violated § 8(a)(1).

Because one coercive interrogation is sufficient to support an injunction, the Court declines to address the other alleged interrogations. See 800 River Rd. Operating Co. v. NLRB, 784 F.3d 902, 916 (3d Cir. 2015) (affirming the Board's order because at least one of the interrogations was coercive).

### d.   Allowance of additional benefits

#### i.   Provision of better refreshments

Petitioner claims respondent violated §§ 8(a)(1) and (3) by providing better food and beverages to its employees at meetings during the organizing campaign.

As respondent correctly contends, an employer may provide free refreshments of minimal value. See Far W. Fibers, Inc., 331 NLRB 950, 952 (2000).  Here, the record indicates that respondent provided bagels at morning meetings more often than it had in the past.  Because bagels are of minimal value, petitioner has not shown a strong likelihood of success on the merits that respondent violated §§ 8(a)(1) and (3).

#### ii.  Provision of childcare benefits

By providing an employee assistance with childcare benefits outside of the enrollment period, petitioner alleges respondent violated §§ 8(a)(1) and (3).  Here, too, petitioner has not shown a strong likelihood of success on the merits.

Human resources manager Laura Sullivan testified that she went through the regular process to help the employee with the change in benefits.  As the ALJ noted, nothing in the record indicates that Sullivan treated the employee differently from any other employee.  The record thus establishes that respondent acted in the same manner it would have in the absence of Local

25. See Donaldson Bros. Ready Mix, Inc., 341 NLRB 958, 961 (2004) ("The employer has the burden of showing that it would have conferred the same benefits in the absence of the union.").

### iii. Improvements in logistics

Finally, petitioner alleges that respondent violated §§ 8(a)(1) and (3) when it made various improvements to the efficiency and performance of delivery routes, truck loading and delivery assistance.  Respondent counters that it made those improvements consistent with past practices.

The record evidence shows that the use of additional help at the Boston facility was unprecedented.  Although W.B. Mason had recently acquired another company and has brought in additional help at other facilities in the past, it did not make such changes in Boston until after the Board's petition was filed.  Accordingly, the Company has not met its burden under Donaldson Bros. to show that it would have taken the same actions in absence of union activity.

### e.   Offer to transfer Sean Brennan

Before respondent terminated Brennan, it offered to transfer him to a different location.  The Board contends this violated § 8(a)(1).

Brennan testified that he asked about a transfer to the Woburn, Massachusetts facility in May, 2015, and again in July

or August, 2015, but his request was not allowed. Brennan then claims that a few days after the union rally on September 29, 2015, a company representative approached him about a raise and transfer to the Woburn office.

Respondent contends that Brennan's testimony is uncorroborated but it does not dispute Brennan's testimony. Moreover, the ALJ found Brennan's testimony credible. This Court, in turn, finds that petitioner has made its showing of a strong likelihood of success on this issue.

### f.   Employer statements

The Board also claims that W.B. Mason violated § 8(a)(1) when its representatives allegedly made several statements that portrayed the union in a negative light or gave the impression that the company was monitoring the employees' organizing activities. W.B. Mason generally contends that those statements are not corroborated by the record evidence.

#### i.   Statements from Mike Penn

First, the Court concludes that the Board has not shown a strong likelihood of success with respect to comments by Mike Penn, a labor relations consultant hired by respondent to lead meetings with employees. The ALJ found credible Penn's testimony during which he stated that he provided a balanced view of the organization and bargaining process and that he did

not say bargaining would start from scratch.  Thus, the Court concludes Penn's statements did not violate § 8(a)(1).

### ii. Origins of the organizing campaign

Next, respondent maintains that it did not violate the NLRA with respect to alleged comments that it would find out who started the organization movement because vice president of distribution Mike Meath did not attend the meeting at which it was alleged he made the comment.  Nevertheless, the Board has shown a strong likelihood of success.

Who made the statement is irrelevant because the ominous statement, no matter who made it, indicated that the company would be monitoring its employees.  Such a statement is sufficiently coercive to violate § 8(a)(1). See Rich's of Plymouth, 578 F.2d at 884-85.

### iii. Promise by Carlos DeAndrade

The Board contends that after Local 25 filed a petition for representation, Carlos DeAndrade asked employees to submit their grievances and that the company would work to fix them.  Here, too, W.B. Mason alleges that DeAndrade did not speak at the meeting during which the comments were allegedly made and that the testimony of petitioner's witness was not credible.

An employer who solicits grievances and promises to remedy them can violate § 8(a)(1). Id. at 883.  Factors include the

timing of such conduct and whether they were made at meetings convened by the employer. Id.  In this case, the statements were made shortly after 20 to 25 employees organized a rally in favor of union representation and the meeting was not part of a regularly scheduled session.  These facts support a finding that the statements violated § 8(a)(1). Id.  Moreover, the ALJ found the employees' testimony more credible than DeAndrade's with respect to who spoke at that meeting and this Court defers to that finding. See Pye v. Young Women's Christian Ass'n of W. Mass., 419 F. Supp. 2d 20, 22 (D. Mass. 2006).

Accordingly, petitioner has shown a strong likelihood of success with respect to respondent's solicitation of grievances and promises to remedy the employees' problems.

### 2. Irreparable Harm

Petitioner alleges that in the absence of a temporary injunction, it would be irreparably harmed by:  1) a chilling effect on employee willingness to participate openly in protected union activity, 2) employee fear of employer retaliation based on the actions of the respondent in discharging union supporters and 3) the reluctance of improperly discharged employees to accept offers of reinstatement when a significant period of time has passed between their discharge and the Board's final order in the administrative proceedings.

Furthermore, petitioner avers that without an interim bargaining order, collective bargaining after a final Board decision would be meaningless.

Conversely, the Company contends that petitioner would not suffer irreparable harm if an injunction is not granted because the alleged violations occurred over a year ago.

In this context, however, the Board's delay is insubstantial. This case involves multiple allegations of alleged unfair labor practices and the complaints were not completely consolidated before an ALJ until June, 2016, just three months before petitioner sought a temporary injunction in this Court. Accordingly, the Court concludes that the irreparable harm factor weighs in petitioner's favor. See Pye v. Longy Sch. of Music, 759 F. Supp. 2d 153, 169 (D. Mass. 2011).

### 3.    Balance of Hardships

W.B. Mason asserts that 1) reinstatement of terminated employees would cause the company to be overstaffed and 2) a bargaining order would change, not preserve the status quo at the company and thus the balance of hardships favors it.

Petitioner generally suggests that the perceived harm the Company created through its actions will cause greater injury than any alleged countervailing harm that it might suffer under a temporary injunction.

The Court agrees with petitioner.  Any harm the Company might suffer as a result of a temporary injunction "will only last until the Board's final determination."  Pan Am. Grain Co., 805 F.2d at 28.  Thus, respondent can discharge the newly instated employees and any bargaining obligations it incurs under the order if it ultimately prevails on the administrative claim.  The perceived harm that the Company created through its actions will cause greater injury than the alleged countervailing harm it might suffer under a temporary injunction.  See id. at 28.

### 4. Public Interest

Respondent does not contest this element.  Accordingly, the Court concludes that the public interest factor weighs in petitioner's favor.

**ORDER**

For the foregoing reasons,

1) Petitioner's motion to try the temporary injunction on the administrative record (Docket No. 2) is **ALLOWED.**

2) Petitioner's motion for temporary injunctive relief (Docket No. 2) is **ALLOWED.**

**So ordered.**

                                          /s/ Nathaniel M. Gorton_____
                                          Nathaniel M. Gorton
                                          United States District Judge

Dated November 28, 2016